# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

**UNITED STATES OF AMERICA**                                                                          **PLAINTIFF**

v.                                                                                              No. 5:22-cr-15-BJB

**MICAH GRAY**                                                                                         **DEFENDANT**

### OPINION & ORDER OVERRULING OBJECTION TO VENIRE

Micah Gray is an African American man currently on trial, charged with distributing—and possessing with the intent to distribute—methamphetamine. He objects to the pool of prospective jurors drawn in his case, arguing it violates the Sixth Amendment's requirement that a jury venire comprise a "fair cross section of the community." *United States v. Johnson*, 95 F.4th 404, 410 (6th Cir. 2024) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 528–29 (1975)).[*] The lack of African Americans specifically and minorities generally, according to Gray, fails to reflect the African American population in the Western District's Paducah Division: out of 52 prospective jurors, one reported his race on the juror questionnaire as Hispanic and two reported as "multi-race." So "African Americans comprise only 3.8 percent of the proposed jury pool"—"at best"—compared to the approximately 9 percent of the Paducah Division's residents that, according to Gray, are African American. Objection to Jury Venire (DN 97) at 1–2.

The fair-cross-section requirement "focuses only on the 'procedure for selecting juries, and not the outcome of that process.'" *Johnson*, 95 F.4th at 410 (quoting *Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir. 2012)). To establish a prima facie violation, a defendant must show that 1) the group allegedly excluded from the venire is a "distinctive" group within the community; 2) the group's representation in the venire is unreasonable relative to the group's representation in the community; and 3) the underrepresentation is due to "systematic exclusion of the group in the jury-selection process." *Id.* at 412 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

---

[*] Gray also argues that the venire-selection process violated rights he enjoys under the equal-protection component of the Fifth Amendment. *See* Objection to Jury Venire (DN 97) at 4; *United States v. Ovalle*, 136 F.3d 1092, 1095 & n.2 (6th Cir. 1998). But he doesn't offer any reason why the analysis under Fifth Amendment doctrine might differ from that discussed here under the Sixth. Indeed, caselaw indicates the analyses substantially overlap and wouldn't differ as applied to the record in this case. *Cf. Castaneda v. Partida*, 430 U.S. 482, 494 (1977); *Ovalle*, 136 F.3d at 1104. Gray hasn't relied on the Jury Selection and Service Act, 28 U.S.C. § 1861 *et seq.*, to support his request for jury disqualification.

(This constitutional requirement is distinct from the more familiar doctrine announced in *Batson v. Kentucky* that the Fourteenth Amendment "forbids the prosecutor to challenge potential jurors solely on account of their race." 476 U.S. 79, 89 (1986).)

The Government contests only prong three. In his effort to show the required systematic exclusion, however, Gray points back to prong two: the disparity between the percentage of African Americans on his venire and in the community. This begs the question *why* a disparity exists in this case: because of a random, one-off statistical anomaly or something more persistent and sinister? The "challenged disparity" in a given jury pool may serve as evidence of "systematic exclusion" only "if it is inherent to the jury selection process." *Johnson*, 95 F.4th at 412. "This ordinarily requires the defendant to show either a large routine discrepancy or identify a specific procedural or operational flaw linked to the underrepresentation of the distinctive group in the jury venire." *Id.*

Gray hasn't shown either. He has offered no information regarding any other demographic discrepancies in this District. Nor has he pointed to any procedural or operational flaws in the procedures used to select the jury pool in this instance.

To the contrary, the only evidence before the Court regarding the jury-selection process in this case indicates that African Americans were not and are not systematically excluded from the jury pool. As the Government noted, the Western District's General Order 21-01 sets forth its procedures selecting a venire. *See* U.S. District Court for the Western District of Kentucky, General Order No. 21-01: Plan for the Qualification and Random Selection of Grand and Petit Jurors (Jan. 4, 2021). This plan was adopted by the Chief Judge in 2021 after its proposal to and approval by the Sixth Circuit. It calls for the Clerk to draw prospective jurors from three sources: "(a) The Kentucky Secretary of State's voter registration lists; (b) The State of Kentucky Department of Motor Vehicles' licensed drivers list; and (c) The State of Kentucky I.D. list." *Id.* § 2.03. These sources, according to the Court's order, "represent a fair cross-section of the community in the Western District of Kentucky." *Id.* Gray hasn't offered any information or argument to the contrary. Indeed, "[v]oter registration lists are the presumptive statutory source for potential jurors." *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008) (citing 28 U.S.C. § 1863(b)). And the order expressly forbids discrimination in the selection of jurors based on "race, color, religion, sex, national origin, or economic status." General Order 21-01 § 1.03.

At the request of defense counsel, the deputy clerk charged with jury selection in the Paducah Division offered sworn testimony regarding her understanding of the process. Her direct knowledge of the jury-pool selection process was admittedly limited: she explained that the database she uses to draw quarterly jury pools in the Paducah Division is populated and maintained by others in the Louisville office. But

her testimony regarding her use of that database to summon prospective jurors for Gray's trial (like others) was consistent with the General Order. The deputy clerk utilizes a random-selection procedure "to ensure both proportional representation and random selection of names from the" database for the appropriate counties in each respective division. General Order 21-01 § 2.04. The deputy clerk testified that she had no knowledge of the jury pool's racial makeup—and thus no opportunity to exclude a particular race—until after the random-selection procedure had drawn the prospective jurors. She explicitly testified that the Western District does not discriminate in venire selection based on race: she was not "aware of any systematic exclusion of African Americans from the jury pool in this district."

Gray's responses to this evidence fall short of the demanding standard the law establishes for the disqualification of a jury pool on grounds of racial exclusion. At the outset, he's offered no basis to conclude that the discrepancy between representation in the venire and the community is "large," much less that similar variance is "routine." *Johnson*, 95 F.4th at 412. And as he candidly admitted (before the Government pointed him to the General Order), he "does not possess any information whatsoever about the selection procedure that [the Western District] use[s]." Objection to Jury Venire at 3. Nor did he rebut the deputy clerk's testimony that the District doesn't exclude any racial groups from its venire selections. Instead, as noted above, he focused almost exclusively on prong two: the disparity between the racial makeup of his venire and the broader community. But a defendant can't show systematic exclusion by "merely emphasiz[ing] African Americans' underrepresentation in the district's jury wheel relative to their share of the district's population." *See United States v. Jackson*, 768 F. App'x 400, 404–05 (6th Cir. 2019). Given the lack of evidence of "a large routine discrepancy" or a "specific procedural or operational flaw" in the selection procedures, Gray's motion necessarily fails. *Johnson*, 95 F.4th at 412.

To be clear, Gray's complaint that his jury pool lacks racial diversity is entirely understandable. And it's hardly a trivial issue: The United States District Court takes great care to standardize and randomize its jury selection process. That formal process is meant to address potential concerns like Gray's and to demonstrate to *all* litigants, jurors, and citizens that the solemn role of the criminal jury is available equally and fairly to all qualified citizens regardless of race, sex, or creed. *Cf. Taylor*, 419 U.S. at 527 ("To exclude racial groups from jury service [would] be 'at war with our basic concepts of a democratic society and a representative government.'" (quoting *Smith v. Texas*, 311 U.S. 128, 130 (1940))). Following a nondiscriminatory and representative process is crucial to the perception and reality of equal justice under the law in this country. Because the Court followed such a process here, "[d]efendants are not entitled to a jury of any particular composition," *id.* at 538, or a "jury itself" that the litigant or judge deems "representative," *Johnson*, 95 F.4th at 410 (quotation

omitted). Rather, "[t]he Sixth Amendment guarantees only the opportunity for a representative jury," and that's what Gray received. *Id.* (quotation omitted). Because the record shows that venire selection in the Western District takes care to include all qualified members of the community and does not systematically exclude African Americans, his motion to disqualify the venire fails.